# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00709-CV

**Green Tree Servicing, LLC, as authorized servicing agent for Conseco Finance Servicing Corporation, Appellant**

**v.**

**Travis County, et al., Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT NO. D-1-GV-05-004522, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Green Tree Servicing, LLC, as authorized servicing agent for Conseco Finance Servicing Corporation ("Green Tree") appeals a post-answer default judgment rendered against it in a suit for ad valorem taxes assessed on ten mobile homes by appellees Travis County, the Austin Independent School District, the City of Austin, Austin Community College, Pflugerville Independent School District, Del Valle Independent School District, and Travis County Emergency Services District Nos. 2 and 11 (collectively, "Travis County"). We will reverse the trial court's judgment and remand the cause for a new trial.

### FACTUAL AND PROCEDURAL BACKGROUND

Travis County sued Conseco Finance Servicing Corporation ("Conseco") seeking to recover past due ad valorem taxes on 53 mobile homes for which Conseco was listed as the "owner"

in the tax appraisal records. Conseco's registered agent was served with citation in October 2005. Thereafter, Travis County learned that Conseco had filed for protection under Chapter 11 of the United States Bankruptcy Code and that the resulting reorganization case was pending in federal district court in Illinois. Consequently, pursuant to section 362(a) of the bankruptcy code, proceedings against Conseco were stayed. In March 2006, however, Green Tree filed an answer identifying itself as "Green Tree Servicing, LLC, F/K/A Conseco Finance Servicing Corp, Defendant," apparently acting as a successor to Conseco. Green Tree asserted, among other defenses, that it was not the owner of the property taxed as of January 1 of the year for which the tax was imposed and that the taxing authorities had failed to record some or all tax liens with the Texas Department of Housing and Community Affairs (TDHCA). Travis County amended its petition to name Green Tree as a defendant in place of Conseco.

According to Travis County, its attorneys and the attorneys representing Green Tree engaged in informal discovery in an attempt to identify individuals who owned the mobile homes on the date the delinquent taxes accrued.[1] The parties exchanged a spreadsheet that displayed the identifying data for each mobile home, the owner's name as listed in the TDHCA records, the record lienholder, the date of any repossession by Green Tree, the date of any resale by Green Tree of the repossessed mobile home to a third party, and the name of any new owner. With this information, Travis County was able to identify the owners responsible for delinquent taxes owed on several of the mobile homes and collected several of the delinquent tax accounts. Green Tree also admitted

---

[1] Although Green Tree's appellate counsel were not representing Green Tree at this time, they do not dispute Travis County's description of the informal discovery that took place.

responsibility for the amounts due on eight of the mobile homes and paid them. Travis County added as defendants the individuals who owed unpaid taxes on several other of the mobile homes. In its trial petition, Travis County named Green Tree as a defendant with respect to the taxes due on ten of the mobile homes.

Travis County requested and obtained a May 24, 2010 trial setting. On March 23, counsel for each named defendant was sent a notice of the trial setting by certified mail, return receipt requested. Travis County received a return receipt confirming that the notice was received in the offices of Green Tree's attorneys on March 24. Trial was held on May 24 before a tax master. Neither Green Tree nor its attorneys appeared at trial. Travis County offered as exhibits a copy of the consolidated tax records for each of the mobile homes still included in the suit and a printed e-mail message from Green Tree's attorney to which was attached the spreadsheet the parties exchanged listing the information regarding repossession and resale dates and current ownership of the various mobile homes. Travis County characterizes the spreadsheet it offered as setting out "the owner's name according to the TDHCA records, the [Green Tree] account number, the status of the account, [Green Tree's] repossession date, any resale date, the name of the buyer, [and] the delinquent tax years claimed." In its brief, Travis County states that for each of the ten mobile homes for which it sought to recover unpaid taxes from Green Tree, the spreadsheet showed that Green Tree "had repossessed the unit prior to January 1 of at least one of the years for which taxes were delinquent and had resold it after the beginning of that year" which, according to Travis County, made Green Tree liable for the taxes imposed in that year. The consolidated tax records

admitted into evidence set forth the amount of delinquent tax Travis County contended was due for each mobile home along with calculated penalties and interest, attorney's fees, and costs.

The tax master recommended entry of judgment against each of the defendants for the amount of delinquent tax, penalties and interest, attorney's fees, and costs associated with the mobile homes for which each defendant "was/were the owner of record . . . or was/were claiming some right, title, or interest thereto" on January 1 of the year the tax was imposed. The tax master signed a Master's Report making findings of fact, including the amounts due for each mobile home, and recommended that the district court adopt a proposed judgment. The district court approved and signed the recommended judgment. The judgment found Green Tree liable for taxes owed on ten of the mobile homes at issue in the suit. The judgment ordered that Travis County recover from Green Tree $19,374.21 as delinquent taxes, penalties and interest, attorney's fees, and costs associated with the ten mobile homes.

After receiving notice of the post-answer default judgment against it, Green Tree timely filed a motion for new trial purporting to establish the three *Craddock* elements. *See Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939). Attached to the motion was the affidavit of counsel for Green Tree, who averred that she had read the motion for new trial and that "the facts stated in it are within [her] personal knowledge and are true and correct." Green Tree filed no additional affidavits in support of its motion. Travis County did not file a response to the motion for new trial, which was never set for a hearing and was overruled by operation of law. This appeal followed.

4

**DISCUSSION**

In two issues, Green Tree contends that the trial court erred in failing to grant its motion for new trial and by allowing it to be overruled by operation of law.[2] Trial courts have broad discretion in ruling on motions for new trial. *See Limestone Constr., Inc. v. Summit Commercial Indus. Props., Inc.*, 143 S.W.3d 538, 542 (Tex. App.—Austin 2004, no pet.). When a motion for new trial is overrruled by operation of law, the issue is whether the trial court abused its discretion in allowing the motion to be overruled. *Id.* (citing *Bank One of Tex. N.A. v. Moody*, 830 S.W.2d 81, 85 (Tex. 1992)). A trial court abuses its discretion if it does not grant a motion for new trial seeking to set aside a post-answer default judgment when the movant has satisfied the three-element *Craddock* test. *See Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 926 (Tex. 2009). Under the *Craddock* test, a default judgment should be set aside and a new trial granted when the defaulting party establishes that (1) the failure to appear was not intentional or the result of conscious indifference, but was the result of an accident or mistake, (2) the motion for new trial sets up a meritorious defense, and (3) granting the motion will occasion no delay or otherwise injure the

---

[2] The first appellate issue states that the trial court "should have granted" Green Tree's motion for new trial, and the second issue states that the trial court erred in rendering judgment against Green Tree because it was a lienholder rather than an owner of the property at issue and therefore could not be held liable for property taxes assessed on that property. While the second appellate issue appears to challenge the legal basis for the judgment, Green Tree has not requested that this Court render judgment in its favor due to the trial court's misapplication of the law. And in its brief Travis County disputes Green Tree's status as a lienholder. Consequently, we do not read the second appellate issue as an independent challenge to the judgment. Rather, we read these issues together to complain that the trial court erred in failing to grant the motion for new trial despite Green Tree's having met the *Craddock* test, with the second issue explaining how Green Tree's motion for new trial "set up" a meritorious defense to Travis County's claim that it was liable for taxes on the ten mobile homes.

5

plaintiff. *Id.* at 925; *Craddock*, 133 S.W.2d at 126. When applying the *Craddock* test, the trial court looks to the knowledge and acts of the defendant as contained in the record before the court. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 82 (Tex. 1992). If the factual allegations in the movant's affidavits are uncontroverted, it is sufficient that the motion for new trial and accompanying affidavits set forth facts which, if true, would satisfy the *Craddock* test. *Id.* Conclusory allegations are insufficient. *Id.*

### Conscious indifference

In determining whether the failure to appear at trial was due to intentional disregard or conscious indifference, we look to the knowledge and acts of the defendant. If the factual assertions in the defendant's affidavit are not controverted by the plaintiff, the defendant satisfies the requirement if the affidavit sets forth facts that, if true, negate intentional or consciously indifferent conduct by the defendant. *See Director, State Emps. Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 269 (Tex. 1994). Proof of accident, mistake, justification, or other reasonable explanation negates intent or conscious indifference. *Anderson v. Anderson*, 282 S.W.3d 150, 153 (Tex. App.—El Paso 2009, no pet.). Green Tree's motion for new trial states that "Green Tree had appointed Johnson & Silver, LLP as its new legal representation, [and] due to the switch in legal representation Johnson & Silver, LLP was unaware of the tax trial scheduled for May 24, 2010." In her affidavit, Jamie Silver avers that this statement is within her personal knowledge and is true and correct. Green Tree's motion establishes that the law firm it retained to take over its cases did not adequately handle the transfer of litigation to its office and failed to realize that there was a trial setting in one of the cases transferred to it. This negates the possibility that Green Tree's failure to

6

appear was intentional or the result of conscious indifference. *See State Farm Life Ins. Co. v. Mosharaf*, 794 S.W.2d 578, 584 (Tex. App.—Houston [1st Dist.] 1990, writ denied) (first prong of *Craddock* test met when insurance company made filing mistake and file never made it to right person); *Evans v. Woodward*, 669 S.W.2d 154, 155 (Tex. App.—Dallas 1984, no writ) (first prong of *Craddock* test met when failure to file answer was due to confusion in attorney's office rather than indifference on defendant's part). Mere negligence does not amount to conscious indifference. *Levine v. Shackelford, Melton & McKinley, L.L.P.*, 248 S.W.3d 166, 169 (Tex. 2008) ("[T]he complete definition of conscious indifference amounts to more than mere negligence."); *Smith v. Babcock & Wilcox Constr. Co.*, 913 S.W.2d 467, 468 (Tex. 1995). We conclude that Green Tree satisfied the first prong of the *Craddock* test.[3]

**Meritorious defense**

The second prong of the *Craddock* test requires Green Tree to "set up" a meritorious defense in its motion for new trial. 133 S.W.2d at 16. The motion sets up a meritorious defense if it alleges facts which in law would constitute a defense to the plaintiff's cause of action and is supported by affidavits or other evidence providing prima facie proof that the defendant has such a

---

[3] In its brief, counsel for Green Tree elaborates further on the reason it failed to appear at trial stating that the notice of the trial setting was miscalendared. Travis County asserts that this statement contradicts the facts as stated in the motion for new trial and therefore Green Tree's allegations regarding mistake or accident, although uncontroverted by Travis County, were controverted by its brief and cannot be taken as true. Even if facts stated in an appellate brief could controvert sworn allegations in a motion for new trial, we do not agree that the statements are inconsistent. In the motion for new trial, Green Tree alleged that its counsel was unaware of the trial setting. This is not inconsistent with the statement in its brief that the reason counsel was unaware of the trial setting was because of a mistake in calendaring the notice.

7

defense. *Dolgencorp*, 288 S.W.3d at 928 (citing *Ivy v. Carrell*, 407 S.W.2d 212, 214 (Tex. 1966)). Once such requirements are met, controverting evidence offered by the nonmovant should not be considered. *Id.* Green Tree's motion for new trial, supported by the affidavit of its counsel confirming the truth of the assertions made in the motion, raises the following defenses: (1) Green Tree is not obligated to pay any taxes for tax years in which Travis County failed to perfect a tax lien; (2) Travis County is not entitled to collect in the capacity in which it sued; (3) Green Tree is not liable in the capacity in which it was sued; and (4) Green Tree is not the owner of the manufactured homes in question and therefore is not subject to personal liability for the taxes. If any of these defenses qualifies as a "meritorious defense," the second prong of *Craddock* is satisfied.

Green Tree's motion states that it is not the owner of the mobile homes and that "[o]nly owners are liable for property taxes, lienholders are not liable for property taxes because the term owner does not encompass a lienholder." *See* Tex. Tax Code Ann. § 32.07 (West 2008) (property taxes are personal obligation of person who owns or acquires property on January 1 of year for which tax is imposed). Green Tree's counsel's affidavit affirms that the facts stated in the motion, including the statement that Green Tree is not the owner of the mobile homes at issue in this case, are within her personal knowledge and are true and correct. The "defense" that Green Tree has "set up" is that because, as a matter of fact, it is a lienholder rather than the owner of the mobile homes it is not, as a matter of law, liable for the taxes.

We first consider Travis County's contention that the motion for new trial did not meet the *Craddock* test because it was "based on the assertion that [Green Tree] was not the owner of the mobile homes in question." According to Travis County, this "unsupported denial of

8

ownership is closely analogous to the allegations asserting ownership made by the appellant in *Ivy v. Carrell*, of which the [s]upreme [c]ourt said, 'These are but allegations of conclusions.'" In *Ivy*, the central issue being litigated was the ownership of a piece of land. The plaintiff sought a declaration that a deed that had been executed and delivered to Carrell by Ivy was in fact a mortgage, thereby removing a cloud on the title to the land described in the deed. The supreme court noted that the only allegations in the motion for new trial that related to a defense were the defendant's assertions that he "had a valid deed to the land," that he "had a meritorious defense," and that he was "the fee simple owner" of the land in question. *Ivy*, 407 S.W.2d at 215. The supreme court held that these "allegations of conclusions" were insufficient to set up a meritorious defense. *Id.* In *Ivy*, the issue at trial was the ownership of the property, and Ivy's bare assertions of ownership did not contain facts which, if true, would establish a meritorious defense to a claim that Carrell in fact owned the property. In the present case, the issue at trial was Green Tree's liability for the taxes assessed on the mobile homes. Green Tree's motion for new trial did not make the conclusory allegation that it was not liable for the taxes; rather it stated that it was not the owner of the mobile homes, a fact which, if true, would constitute a defense to the assessment of taxes against it. *See* Tex. Tax Code Ann. § 32.07 (property taxes are personal obligation of person who owns or acquires property on January 1 of year for which tax is imposed).

In *Ivy* the supreme court also observed:

> The default judgment was entered only after the trial court had heard the testimony of the plaintiff, his wife and a third person. Their testimony related the details of the transaction in which the deed was executed and clearly compelled the conclusion that the deed was intended as a mortgage; and yet, the defendant did not controvert the

9

facts to which they testified by either allegations in his motion or his testimony in support of the motion.

*Ivy*, 407 S.W.2d at 215. In the present case, the default judgment was rendered after the trial court was presented with evidence demonstrating that Green Tree had, during relevant tax years, repossessed the mobile homes at issue and held them on January 1 of each tax year for which taxes were assessed against them. Travis County relied on Green Tree's status as a foreclosing lienholder to support its claim that Green Tree was liable for the taxes.[4] Green Tree had no reason to controvert Travis County's assertion that it was a lienholder—in fact, Green Tree's defense relies on that fact. Contrary to the *Ivy* case, we are not here presented with a motion for new trial that is based on a conclusory allegation regarding an issue central to the case. Moreover, Green Tree's motion did not fail to controvert facts adduced at trial that would undermine its defense. We conclude that Green Tree's motion, supported by the affidavit, provides prima facie proof that it is a lienholder, rather than the owner, of the mobile homes.[5] If Green Tree is correct that a repossessing lienholder

---

[4] In its brief, Travis County states:

> Plaintiff's Exhibit 2 showed that Appellant was not an ordinary lienholder of the ten (10) mobile homes attributed to it in the Judgment. The spreadsheet included in the exhibit showed that each of those mobile homes has been repossessed by Appellant prior to January 1 of at least one of the years for which taxes were delinquent and that Appellant had resold the unit after the beginning of that year. So, the spreadsheet confirmed that Appellant was in possession or had the right to possession of the mobile homes on January 1 of those delinquent years, as reflected in the tax appraisal roll.

[5] Courts should liberally construe the evidence when passing on a motion for new trial seeking to set aside a default judgment. *See Simmons v. McKinney*, 225 S.W.3d 706, 709 (Tex. App.—Amarillo 2007, no pet.) (citing *Sexton v. Sexton*, 737 S.W.2d 131, 133 (Tex. App.—San Antonio 1987, no writ)). "The law prefers that cases be disposed of on their merits wherever

10

is not liable under tax code section 32.07 for the taxes at issue in this case, it has "set up" a meritorious defense as required to meet the *Craddock* test.

We next consider whether Green Tree's contention that it is a repossessing lienholder of the mobile homes, if true, means that it does not "own" them within the meaning of tax code section 32.07 and would not be liable for the taxes assessed. *See* Tex. Tax. Code Ann. § 32.07 (providing that property taxes are personal obligation of one who owns or acquires property on January 1 of year tax is imposed). In a thorough and well-reasoned opinion, the Dallas Court of Appeals has addressed this issue and concluded that the term "owner," as used in tax code section 32.07, does not encompass a lienholder who takes possession of personal property collateral for the purpose of selling it pursuant to a security agreement. *See Comerica Acceptance Corp. v. Dallas Cent. Appraisal Dist.*, 52 S.W.3d 495, 497 (Tex. App.—Dallas 2001, pet. denied). The court's holding resulted from its application of principles of statutory construction and consideration of public policy implications. Travis County urges this Court not to follow *Comerica*, but instead to follow a decision from the Corpus Christi Court of Appeals in which the court reached the opposite result. *See General Elec. Capital Corp. v. City of Corpus Christi*, 850 S.W.2d 596, 599 (Tex. App.—Corpus Christi 1993, writ denied). We decline to do so. We adopt both the analysis and the result reached in *Comerica*:

_____

possible, rather than by default." *See General Elec. Capital Fin. Leasing Servs., Inc. v. Stanfield*, 71 S.W.3d 351, 356 (Tex. App.—Tyler 2001, pet. denied); *see also Titan Indem. Co. v. Old S. Ins. Group, Inc.*, 221 S.W.3d 703, 708 (Tex. App.—San Antonio 2006, no pet.) ("The historical trend in default judgment cases is toward the liberal grant of new trials."); *Hock v. Salaices*, 982 S.W.2d 591, 593 (Tex. App.—San Antonio 2006, no pet.) ("It is a basic tenet of jurisprudence that the law abhors a default. . . . Equity is rarely served by a default.").

11

We construe tax statutes strictly against the taxing authority and liberally in favor of the taxpayer. *See Dallas Cent. Appraisal Dist. v. Park Stemmons, Ltd.*, 948 S.W.2d 11, 13 (Tex. App.—Dallas 1997, no writ). Furthermore, when a term is not defined in a statute, we give it its ordinary meaning. *See* Tex. Gov't Code Ann. § 312.002 (West 1998); *City of Dallas v. Cornerstone Bank*, 879 S.W.2d 264, 270 (Tex. App.—Dallas 1994, no writ).

Interpreting "owner" to include a secured party in possession of property for purposes of selling it to recover on a debt does not comport with these rules of statutory construction. Simply stated, a lien-holder is not an "owner" of the property within the common meaning of that term. Typically the lienholder does not enjoy any of the common benefits of ownership. A lienholder ordinarily has no legal right to share in any accretions to the collateral's value, or a legal obligation to bear any risk of lost value. A lienholder ordinarily has no right to possession or use of the property; what right it has to use and possession are only in the context of its right to take possession of its collateral upon default and sell it pursuant to the security agreement. Thus, to broaden the term "owner" to include all lienholders in possession of collateral would require us to liberally construe the statute in favor of the taxing authority and against the taxpayer. Such an interpretation would be contrary to the accepted rules of construction.

True to the rules of construction relating to tax statutes, we employ a more common definition of "owner." Specifically, we construe the term "owner," as used in section 32.07 of the Texas Tax Code, as a person or entity holding legal title to the property, or holding an equitable right to obtain legal title to the property. *See, e.g.*, Tex. Tax Code Ann. § 152.001(9) (West Supp. 2001). This common definition of "owner" would not encompass a lienholder who takes possession of personal property collateral for the purpose of selling it pursuant to a security agreement.

There are also public policy reasons opposing the District's interpretation. First, assessing ad valorem taxes against a lienholder in possession of the property in anticipation of a foreclosure sale could result in taxing the lienholder based on a value greater than what the secured party could legally recover from selling the property. Ad valorem taxes are generally based on the market value of personal property. *See id.* § 23.01. However, a secured party who forecloses on property may only retain the amount of sales proceeds sufficient to satisfy the remaining debt and certain expenses; any sales proceeds in excess of those amounts must be returned to the debtor. *See* Tex. Bus. & Com. Code Ann. § 9.504(b) (West 1991). Thus, while the secured party could only legally retain proceeds that may represent only a portion of the market value, the secured party would be assessed ad valorem taxes based on the entire market value of the property.

12

> Second, if the lienholder in possession receives payment of the remaining amounts owed against the property, the lienholder must relinquish possession of the property to the record owner. *See id.* § 9.506. Therefore, if the secured party possessed the property on January 1, and the record owner paid off the liability secured by the property on January 2, under the District's suggested interpretation, the secured party would still be liable for the ad valorem taxes on the personal property owned, possessed, and enjoyed by the record titleholder.

*Comerica*, 52 S.W.3d at 497-98.

By presenting prima facie proof that it did not own the mobile homes at issue but instead was a repossessing lienholder, Green Tree has set up a meritorious defense to its liability for the taxes assessed. *See* Tex. Tax Code Ann. § 32.07; *Comerica Acceptance Corp.*, 52 S.W.3d at 497 (term "owner" in tax code 32.07 does not encompass lienholder who takes possession of personal property collateral for purpose of selling it pursuant to security agreement). Consequently, Green Tree has met the second prong of the *Craddock* test.

### *Absence of delay or injury to Travis County*

As to the third *Craddock* prong, Green Tree asserted in its motion for new trial that granting a new trial would not delay or prejudice Travis County because Green Tree was ready for trial and willing to reimburse Travis County for reasonable costs and expenses it incurred. Once Green Tree alleged that granting a new trial would not injure Travis County, the burden of proof shifted to Travis County to prove injury. *See Dolgencorp*, 288 S.W.3d at 929 (citing *Mathis v. Lockwood*, 166 S.W.3d 743, 744 (Tex. 2005), *Director, State Emps. Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 270 (Tex. 1994), and *Estate of Pollack v. McMurrey*, 858 S.W.2d 388, 393 (Tex. 1993)). Travis County did not file a response to the motion for new trial, and the motion was

13

not set for a hearing. Travis County failed to carry its burden of proving injury. Consequently, Green Tree has met the third prong of the *Craddock* test.

Because Green Tree's motion for new trial satisfied all three elements of the *Craddock* test, the trial court abused its discretion by failing to grant the motion, and Green Tree is entitled to a new trial.

## CONCLUSION

Having concluded that the trial court abused its discretion by failing to grant Green Tree's motion for new trial and by allowing it to be overruled by operation of law, we reverse the trial court's judgment and remand the cause for a new trial.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Reversed and Remanded

Filed: August 31, 2011